# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DICKSON,<br><br>         Plaintiff,<br><br>   v.<br><br>GOMEZ, *et al.*,<br><br>         Defendants. | Case No.  1:17-cv-00294-DAD-BAM (PC)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO SUPPLEMENT<br>(ECF No. 54)<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE UNAUTHORIZED SURREPLY<br>(ECF No. 55)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br>(ECF No. 37)<br><br>**FOURTEEN (14) DAY DEADLINE** |

### FINDINGS AND RECOMMENDATIONS

I.    **Background**

Plaintiff Christopher Dickson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint against Defendants Gomez, Rios, and Martinez for excessive force, against Defendants Duncan and Esparza for violations of Plaintiff's due process rights, and against Defendant Sao for deliberate indifference to serious medical needs.

1

On December 3, 2019, Defendants filed a motion for summary judgment on the grounds that Plaintiff failed to exhaust the administrative process before filing this action against Defendants Duncan, Esparza, Gomez, Martinez, Rios, and Sao or for any claim against these Defendants, and that Plaintiff failed to identify all his medical claims and identify Defendant Sao within his inmate appeals and thus did not exhaust administrative remedies as to Defendant Sao and the claim against Defendant Sao.[1]  Fed. R. Civ. P. 56(c), Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), cert. denied, 135 S. Ct. 403 (2014).  (ECF No. 37.)  On January 24, 2020, Plaintiff filed his opposition to the motion for summary judgment, styled as his objection to the motion for summary judgment.  (ECF No. 46.)  Defendants filed a reply on January 29, 2020.  (ECF No. 47.)

On August 12, 2020, Plaintiff filed a motion to supplement his opposition to the motion for summary judgment.  (ECF No. 54.)  Defendants filed a motion to strike, characterizing the filing as an unauthorized surreply, on August 17, 2020.  (ECF No. 55.)  Plaintiff did not file a response to the motion to strike, but the Court finds a response unnecessary.

The motion for summary judgment, motion to supplement, and motion to strike are deemed submitted.  Local Rule 230(l).

## II.   Motion to Supplement and Motion to Strike Unauthorized Surreply

In his motion to supplement, Plaintiff states that while waiting for the Court's ruling on Defendants' fully briefed motion for summary judgment, Plaintiff requested documents from his family that had been filed away for safekeeping.  (ECF No. 54.)  Upon receiving those files, Plaintiff noticed that he was in possession of correspondence that Plaintiff filed with the then-Inspector General Robert A. Barton and the CDCR Ombudsman, trying to get Plaintiff's CDCR 602 Appeals through exhaustion.  As the Court currently has before it the issue of whether Plaintiff properly exhausted his administrative remedies or whether he was hindered from that obligation, Plaintiff has submitted this correspondence as exhibits attached to his motion to supplement.  (Id.)

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 37-2.)

In response, Defendants argue that the motion to supplement should be considered a surreply not authorized by the Federal Rules of Civil Procedure or the Local Rules.  (ECF No. 55.)  Plaintiff's supplement to his opposition is therefore unauthorized, impermissible and should be stricken and not considered by this Court.  (Id.)

In an abundance of caution, and in light of Plaintiff's *pro se* status, the Court finds it appropriate to grant Plaintiff's motion to supplement and deny Defendants' motion to strike the surreply as unauthorized.  Although Defendants are correct that nothing in the Federal Rules of Civil Procedure or the Court's Local Rules authorizes the filing of a surreply, the Court finds that Plaintiff's surreply does not change the Court's analysis of the underlying summary judgment motion, as discussed below.  Therefore, Defendants are not prejudiced by the Court's consideration of the additional exhibits filed.

## III.   Legal Standards

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones v. Bock, 549 U.S. 199, 216 (2007); Albino, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

///

3

1    Defendants must first prove that there was an available administrative remedy and that

2    Plaintiff did not exhaust that available remedy.  Williams v. Paramo, 775 F.3d 1182, 1191 (9th

3    Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to

4    Plaintiff to show something in his particular case made the existing and generally available

5    administrative remedies effectively unavailable to him.  Williams, 775 F.3d at 1191 (citing

6    Albino, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue

7    of exhaustion remains with Defendants.  Id. (quotation marks omitted).

8           **B.     Summary Judgment Standard**

9           Any party may move for summary judgment, and the Court shall grant summary judgment

10   if the movant shows that there is no genuine dispute as to any material fact and the movant is

11   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

12   747 F.3d at 1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

13   party's position, whether it be that a fact is disputed or undisputed, must be supported by

14   (1) citing to particular parts of materials in the record, including but not limited to depositions,

15   documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

16   presence or absence of a genuine dispute or that the opposing party cannot produce admissible

17   evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

18   consider other materials in the record not cited to by the parties, although it is not required to do

19   so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

20   2001); accord Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

21          The defendants bear the burden of proof in moving for summary judgment for failure to

22   exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

23   administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

24   If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

25   forward with evidence showing that there is something in his particular case that made the

26   existing and generally available administrative remedies effectively unavailable to him."  Id.  "If

27   undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust,

28   a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f

material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

**IV.    Discussion**

**A.    Summary of CDCR's Administrative Review Process**

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints.  Cal. Code Regs., tit. 15 § 3084.1. Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare."  Id. at § 3084.1(a).

The process is initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal.  Id. at § 3084.2(a).  In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue.  Id. at § 3084.2(a)(3).  If the inmate does not have the requested identifying information about the staff member, he must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question.  Id.

Three levels of review are involved—a first level review, a second level review and a third level review.  Id. at §§ 3084.5(c)–(e), 3084.7.  Bypassing a level of review may result in rejection of the appeal.  Id. at § 3084.6(b)(15).  Under the PLRA, a prisoner has exhausted his administrative remedies when he receives a decision at the third level.  See Barry v. Ratelle, 985 F.Supp. 1235, 1237–38 (S.D. Cal. 1997).

**B.    Summary of Allegations in Second Amended Complaint**

Plaintiff is currently housed at California Correctional Institution in Tehachapi, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison in Delano, California.  Plaintiff names the following defendants: (1) Correctional Officer G. Gomez; (2) Correctional Officer B. Rios; (3) Correctional Officer D. Martinez; (4) Correctional Lieutenant S. Duncan; (5) Correctional Lieutenant N. Esparza; and (6) Dr. Jeff Sao.

///

Plaintiff alleges that on May 5, 2016, he crawled out of his cell because officers had taken his walking cane.  When Plaintiff came out on his hands and knees, he told Defendants Gomez and Rios that he needed to see a doctor because he did not feel safe at a level four prison without the ability to get around and protect himself.  Defendants Gomez and Rios told Plaintiff that he needed to go back into his cell.  Plaintiff told them he needed to see a doctor or a sergeant because he felt suicidal and feared for his life.  Defendants Gomez and Rios grabbed Plaintiff by his arms and tried to force him back into his cell, but Plaintiff crawled out into the dayroom. Defendant Rios ordered Plaintiff to put his hands behind his back and handcuffed Plaintiff so that he could take him to a crisis bed.  Once Plaintiff was handcuffed, Defendants Gomez and Rios tried to force Plaintiff back into his cell headfirst, but Plaintiff hooked his foot to the door frame, so he could not go in all the way.  Defendant Rios stepped on Plaintiff's leg to loosen it from the door and kicked Plaintiff into the cell.

Before Defendant Martinez, the tower officer, could close the door, Plaintiff crawled out again and asked to see the doctor.  Defendants Rios and Gomez again tried to force Plaintiff back into his cell but could only get half of Plaintiff's body through the door.  Defendant Gomez then told Defendant Martinez to close the door.  Defendant Martinez opened and closed the door on Plaintiff's back and legs three times before he left it closed on Plaintiff for 5 to 10 minutes. Plaintiff's hands were cuffed behind his back and he could not protect himself from the door.

When Defendants Rios and Gomez returned, they asked Plaintiff if he wanted to go back into his cell.  Plaintiff again requested to see a doctor.  When the door opened, Plaintiff wiggled out of the cell.  Defendants Rios then grabbed Plaintiff by the legs.  Defendant Gomez grabbed Plaintiff by the shoulders and collar, bringing Plaintiff to the door, kicking his bags into the cell and throwing his upper body into the cell while Defendant Rios threw his legs into the cell. Defendant Rios kicked Plaintiff in the leg and butt and stepped on him to prevent Plaintiff from getting out of the cell.  When Defendant Rios attempted to exit the cell, Plaintiff crawled out again.

Defendant Martinez said to take Plaintiff to the program office.  Defendants Gomez and Rios grabbed Plaintiff by the arms and told him to get up and walk to the program office.

Plaintiff told them that he could not walk on his right leg, which was why had a cane.  Defendant Rios told Plaintiff that if he wanted to talk to someone, then he had to get up and walk.  When Plaintiff said that he could not, Defendant Rios told him to use his good leg and hop.  While the officers held Plaintiff's arms, Defendant Rios grabbed Plaintiff by the seat of his pants and Plaintiff hopped out of the dayroom and out the door.  After about 10 or 20 steps, Plaintiff's leg gave out and the officers dragged him a little farther.  Defendant Gomez told Plaintiff that he was not going to carry him, and they dropped Plaintiff face first on the pavement.  Defendants Rios and Gomez decided to take Plaintiff back into the block, so they grabbed Plaintiff by the arms, turned around and dragged him back to his cell.  Plaintiff again hooked his leg to the corner of the door.  Defendant Gomez yanked Plaintiff's leg into the cell and Defendant Rios pulled Plaintiff by the handcuffs into the cell until Plaintiff could feel his arms popping and his wrists lose feeling and gashes being cut into his wrists.  Defendant Rios then put his knee in the center of Plaintiff's back and dropped down on Plaintiff with all of his weight, putting his knee in Plaintiff's lower back and cutting off Plaintiff's breath.  When Plaintiff complained that he could not breathe, Defendant Rios told Plaintiff to shut up and struck Plaintiff three times in the back of the head with his fist.  Defendant Rios then told someone to activate the alarm.  The responding officers grabbed Plaintiff's legs and tied them, so he could not move or wiggle.  Plaintiff was pulled out of the cell into the dayroom, placed in a wheelchair and taken to an office.

Plaintiff alleges that he was issued a CDCR 115 for assault on staff to cover up the above attack that was inflicted on Plaintiff.  Each correctional officer wrote an incident report and filed an initial report, changing the report and time of the incident to coincide with the activated alarm.

Plaintiff was given an investigative employee, Correctional Officer Duran, to assist as a fact finder and question witnesses.  Plaintiff gave the investigative employee information and questions to ask the correctional officers concerning the incident.  However, Defendant Duncan would not allow the questions to be asked or answered.  Thus, Plaintiff had no recourse or defense.

Plaintiff's CDCR 115 was assigned to hearing officer Lieutenant N. Esparza.  Plaintiff informed Defendant Esparza that he was not allowed to interview the correctional officers, the

1   witnesses to the incident, or the psychologist that he spoke to after the incident.  Nevertheless,

2   Defendant Esparza found Plaintiff guilty of assault.  Plaintiff was given one year in the SHU,

3   placed in Ad-Seg, and lost good time credit.  Plaintiff submitted a 602 grievance, but was denied

4   up through the third level.

5        On May 6, 2016, Plaintiff submitted a medical health care services request form to see the

6   doctor about his injuries after the attack.  Plaintiff was not able to walk or put pressure on his leg,

7   and his back was in pain, making it almost impossible to sit up.  Plaintiff informed medical that

8   this was an emergency, but was not allowed to see a doctor until sick call, five days later.  Two

9   transportation officers brought Plaintiff to CTC medical in a wheelchair.

10       Plaintiff told Defendant Dr. Jeff Sao about the attack and that he was in pain, could not

11  walk, could not put pressure on his legs, and showed him bruises from handcuffs, and gashes and

12  cuts.  Plaintiff also showed Defendant Sao the bruises on Plaintiff's legs, knees, and ankles.

13  Defendant Sao ordered Plaintiff to get out of the wheelchair, and Plaintiff responded that he could

14  not stand.  Defendant Sao stated that if Plaintiff did not get out of the wheelchair, he would send

15  him back to the cell without examination.  When Plaintiff could not get up, Defendant Sao

16  ordered the transportation officers to return him to his cell, without any care.  Plaintiff was then

17  left in Ad-Seg for over seven months without seeing any doctor for his pain or medication, and

18  damage done to his legs and back was not diagnosed or treated.  Plaintiff submitted a CDC 7362

19  medical request on May 15, 2016, May 29, 2016, June 9, 2016, July 3, 2016, August 1, 2016, and

20  September 4, 2016, but was never taken to see a doctor.

21       **C.     Undisputed Material Facts (UMF)[2]**

22       1.  Plaintiff brought his complaint on March 2, 2017.  (ECF No. 1.)

23  ///

---

[2] ECF No. 37-3.  Plaintiff did not provide a separate statement of undisputed facts in his opposition.  Local Rule 260(a).  As a result, Defendants' Statement of Undisputed Facts in support of their motion for summary judgment is accepted except where brought into dispute by Plaintiff's verified Second Amended Complaint and Opposition to the motion for summary judgment.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); Johnson v. Meltzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

2.  Non-health care inmate appeals are appropriate for allegations of excessive force, failure-to-protect, retaliation, or any other alleged misconduct by correctional officers or their superiors.  (Attachment 1, Vila Decl., ¶ 2; Attachment 2, Gonzales Decl., ¶ 2.)

3.  Non-health care inmate appeals are reviewed by the institution Appeals Office and the Office of Appeals.  (Vila Decl., ¶ 2; Gonzales Decl., ¶ 2.)

4.  When an inmate submits an appeal that does not comply with regulations governing the appeal process, the Appeals Coordinator will reject (or "screen out") and return the appeal with the reason for the screening, and instructions on how to correct the defect, if correction is possible.  (Gonzales Decl., ¶ 5.)

5.  The Office of Appeals keeps an electronic record of inmate appeals that proceed through the third level of review.  When an inmate appeal is received by the Office of Appeals, it is assigned a third level tracking number, whether it is screened out or accepted.  (Vila Decl., ¶ 3.)

6.  When the Institutional Appeals Office receives an inmate appeal, the practice is for an Appeals Coordinator to assign a log number and make an initial provisional determination of the issue raised by the appeal.  (Gonzales Decl., ¶ 5.)

7.  Since August 1, 2008, appeals involving inmate medical, dental, and mental-health care issues have been processed by the California Correctional Health Care Services (CCHCS), under the Office of the Federal Receiver appointed in the class-action litigation regarding prison health care, Plata v. Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351.  (Attachment 3, Hart Decl., ¶ 3.)

8.  All levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS).  This system tracks inmate health care appeals/grievances that were received and ultimately rejected and the reason for the rejection.  (Hart Decl., ¶ 4.)

9.  All health care appeals/grievances are subject to a headquarters level of review, either a headquarters' review or a third level review, before the administrative remedies are

9

1  deemed exhausted.  (Hart Decl., ¶¶ 6–7.)

2  10. Between May 5, 2016 and March 2, 2017, Plaintiff did not receive a third and final level

3  of review of an inmate appeal related to the allegations raised in Plaintiff's complaint.

4  (Vila Decl., ¶¶ 4–5(d) & Exhs. A–C; Hart Decl., ¶¶ 8–10(c).)

5       1.  <u>Excessive Force Claims Against Defendants Rios, Gomez, and Martinez</u>

6  11. On May 22, 2016, 17 days after the incident, Plaintiff filed an inmate appeal regarding

7  excessive force against Defendants Rios, Gomez, and Martinez.  (ECF No. 46, p. 7 &

8  Exh. A.)

9  12. After 30 days passed without Plaintiff receiving a notice that the appeal had been received

10  and processed and given a log number, on June 21, 2016, Plaintiff filed a CDCR-22

11  request for interview, requesting the status of the appeal.  (ECF No. 46, p. 7 & Exh. A-1.)

12  13. The appeals office stated that they had not received Plaintiff's appeal.  (<u>Id.</u>)

13  14. On June 30, 2016, Plaintiff submitted another CDCR-22 to Appeals Coordinator D.

14  Tarnoff requesting that a trace be put on the appeal and that the 602 be processed and

15  logged.  Plaintiff did not receive a response.  (ECF No. 46, pp. 7–8 & Exh. A-2.)

16  15. On July 7, 2016, Plaintiff re-filed the original appeal and was interviewed and told that the

17  602 appeal would be accepted and treated as original.  (ECF No. 46, p. 8.)

18  16. Plaintiff's inmate appeal, log number KVSP-O-16-02105, in which Plaintiff alleged that

19  on May 5, 2016, excessive force was used against him by Defendants Rios, Gomez, and

20  Martinez was cancelled on July 11, 2016.  (Gonzales Decl., ¶ 9(a) & Exh. A.)

21  17. Plaintiff appealed the cancellation decision of inmate appeal log number KVSP-O-16-

22  02105, in inmate appeal log number KVSP-O-16-02292.  A third level decision on KVSP-

23  O-16-02922 denying Plaintiff's requested relief was issued on April 11, 2017.  (Vila

24  Decl., ¶ 5(c) & Exh. C; Gonzales Decl., ¶ 9(b) & Exh. B.)

25       2.  <u>Due Process Claims Against Defendants Duncan and Esparza</u>

26  18. Plaintiff's inmate appeal, log number KVSP-O-16-02151, in which Plaintiff contended

27  due process violations by Defendants Duncan, Esparza, Rios, Gomez, and Martinez for

28  fabricating reports was cancelled on October 2, 2016.  (Gonzales Decl., ¶ 9(c) & Exh. C.)

19. On August 10, 2016, KVSP-O-16-02151 was rejected due to missing necessary supporting documents.  (ECF No. 46, p. 9 & Exh. B-2.)

20. Plaintiff reviewed all documents and noticed that no documents were missing, so he resubmitted KVSP-O-16-02151.  (ECF No. 46, p. 9.)

21. On September 23, 2016, Plaintiff received a second level screening informing him that the portion of KVSP-O-16-02151 regarding his disagreement with the disposition of a disciplinary actions was accepted in error, because it was still missing a complete CDCR 837 Crime/Incident report.  (ECF No. 46, pp. 9–10 & Exh. B-3.)

22. Plaintiff went over all documents and counted the complete CDCR 837 and noticed everything was included, and resubmitted his appeal.  (ECF No. 46, p. 10.)

23. On October 6, 2016, Plaintiff received another screening that KVSP-O-16-02151 was being cancelled for disregarding appeal staff's previous instructions.  (ECF No. 46, p. 10 & Exh. B-4.)

24. On October 12, 2016, Plaintiff filed a CDCR-22 form to Correctional Officer Briseno, who he submitted the appeal to, and watched him count out 36 pages of the 837 Crime Incident Report that was included in the 602.  This was the document which the 602 appeal was being cancelled for not having all pages.  (ECF No. 46, p. 10 & Exh. B-5.)

25. Even when Plaintiff obeyed the Appeals Coordinator's orders and CDCR's own Correctional Officer Briseno informed the Coordinator that the document they were seeking was already included in the appeal papers, Plaintiff's appeal was still rejected and cancelled.  Plaintiff could only infer that the powers that be were attempting to deny and delay the process.  (ECF No. 46, p. 11.)

26. Plaintiff appealed the cancellation decision of inmate appeal log number KVSP-O-16-02151, in inmate appeal log number KVSP-O-16-03217.  A third level decision on KVSP-O-16-03217 was issued on March 20, 2017, ordering that inmate appeal KVSP-O-16-02151 be accepted and processed.  KVSP-O-16-02151 received a second level decision on May 22, 2017.  (Vila Decl., ¶ 5(b) & Exh. B; Gonzales Decl., ¶ 9(c)–(d) & Exhs. C–D.)

///

27. Plaintiff's inmate appeal, log number KVSP-O-16-02914, which contended that Defendants Martinez, Rios, and Gomez falsified their 837 reports related to a May 5, 2016 incident, and that Defendants Esparza and Duncan falsified their documents relative to a rules violation report related to the May 5, 2016 incident, received an amended second level response on April 4, 2017.  (Vila Decl., ¶ 5(a) & Exh. A; Gonzales Decl., ¶ 9(e) & Exh. E.)

### 3. Deliberate Indifference Claim Against Defendant Sao

28. On June 30, 2016, Plaintiff filed a Medical Health Care Appeal regarding his claim that he was brought to see a doctor who told Plaintiff that if he did not get out of the wheelchair, the doctor would not see Plaintiff.  (ECF No. 46, p. 12 & Exh. C.)

29. Plaintiff did not submit any health care appeals/grievances that received a final level review against Defendant Sao between May 5, 2016 and March 2, 2017.  (Hart Decl., ¶¶ 9–10(c).)

**D. Discussion**

All of the claims at issue in this suit arose before the filing of the original complaint, and therefore all were required to be exhausted prior to Plaintiff initiating this action on March 2, 2017.  Although Plaintiff did not include his claim against Defendant Sao until the filing of the First Amended Complaint, he was still required to exhaust his administrative remedies with respect to Defendant Sao prior to March 2, 2017.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("[A] prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of litigation."); Rhodes v. Robinson, 621 F.3d 1002, 1007 (9th Cir. 2010) (If a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing.).

### 1. Parties' Positions

Defendants argue that Plaintiff did not fully exhaust the administrative process against any Defendant for any claim alleged in this action, which was filed on March 2, 2017.  Specifically, Defendants contend that Plaintiff's appeal regarding his claims against Defendants Gomez, Rios,

and Martinez was cancelled as untimely submitted, and his appeal of that cancellation was denied. Plaintiff's appeal regarding his claims against Defendants Esparza and Duncan was also cancelled, and although Plaintiff successfully overturned that cancellation, he did not receive a second level decision on the underlying appeal until after this suit was filed. Finally, Defendants argue that Plaintiff never submitted an appeal related to his claim against Defendant Sao.

Plaintiff argues in opposition that he submitted a timely appeal regarding Defendants Gomez, Rios, and Martinez, but he never received an appeal log number. When Plaintiff learned that his original appeal was never received, he resubmitted the appeal, but it was cancelled as untimely. Plaintiff's appeal of the cancellation was denied, in spite of Plaintiff providing evidence in support of his original and timely submission. (ECF No. 46, pp. 7–9, 16–38.) Plaintiff states that he timely submitted an appeal regarding his due process claims against Defendants Esparza and Duncan, which was screened out three times for missing documents. Plaintiff went over all of the documents and found that everything was correctly attached, but the appeal was cancelled for failing to follow staff instructions regarding attaching the correct documents. Plaintiff appealed the cancellation and included supporting documentation from Correctional Officer Briseno, who counted the attached pages and verified that they were all correctly attached. Although Plaintiff eventually received a second level decision granting his request for the original appeal to be processed, by the time he received that decision Plaintiff had already filed the instant action because he believed that his appeals were not being handled fairly and he requested the Court's assistance in getting his appeals exhausted. (Id. at 9–12, 39–70.) Finally, Plaintiff argues that he did submit a medical health care appeal on June 30, 2016 regarding his claim against Defendant Sao. However, he did not receive a timely response and therefore argues that his administrative remedies should be considered exhausted. (Id. at 12–13, 71–73.)

In reply, Defendants argue that the fact that Plaintiff was able to pursue his administrative remedies and appeal decisions cancelling his appeals demonstrates that there were avenues of appeal available to Plaintiff, which he should have exhausted before bringing suit. Therefore, because Plaintiff did not appeal any grievance through the third level prior to filing suit, although

13

the system was capable of use and was used by Plaintiff, Plaintiff failed to demonstrate that he is entitled to any of the limited exceptions to the exhaustion requirement.  Defendants do not specifically address any of Plaintiff's factual assertions regarding his timely first submission of his grievance regarding Defendants Gomez, Rios, and Martinez, or the improper screening of his grievance regarding Defendants Duncan and Esparza.  Finally, Defendants argue that Plaintiff's grievance against Defendant Sao, which has no indication that it was actually submitted, is untimely even if filed on the date Plaintiff alleges, and therefore could not have exhausted Plaintiff's administrative remedies as to this claim.

Plaintiff's surreply contains copies of correspondence Plaintiff allegedly sent regarding his attempts to properly exhaust his administrative remedies in this case.  Although the Court has reviewed the surreply, as noted above, the Court's analysis of the underlying summary judgment motion does not rely on any of the attached documents.

### 2.     Defendants Gomez, Rios, and Martinez

The allegations giving rise to Plaintiff's excessive force claims against Defendants Gomez, Rios, and Martinez occurred on May 5, 2016.  (ECF No. 22, p. 3.)  Plaintiff asserts, and Defendants have not disputed, that he submitted a timely grievance regarding these claims on May 22, 2016, and attaches a copy of the grievance in support of his assertion.  (UMF 11.)  Plaintiff further contends, unopposed, that after waiting thirty days and receiving no response, he filed a CDCR-22 request for interview, requesting the status of the appeal.  (UMF 12.)  When Plaintiff was informed that the appeals office never received the appeal, he submitted another CDCR-22 request to Appeals Coordinator D. Tarnoff requesting that a trace be put on the appeal so that it could be processed and logged.  (UMF 13, 14.)  Plaintiff did not receive a response. (UMF 14.)

On July 7, 2016, Plaintiff re-submitted the appeal regarding these allegations, which was then given log number KVSP-O-16-02105.  (UMF 15, 16.)  KVSP-O-16-02105 was cancelled on July 11, 2016, because the time limits for submitting the appeal were exceeded.  (UMF 16; Gonzales Decl.,¶ 9(a), Exh. A.)  Plaintiff appealed the cancellation of KVSP-O-16-02105 in inmate appeal log number KVSP-O-16-02292.  (UMF 17.)  Plaintiff received a third level

14

1    decision in KVSP-O-16-02292, denying his appeal of the cancellation, on April 11, 2017.  (Id.)

2           As noted above, Defendants have not disputed Plaintiff's factual contentions—supported

3    by evidence attached to both Defendants' motion for summary judgment and Plaintiff's

4    opposition—regarding his efforts to timely exhaust his administrative remedies with respect to his

5    excessive force claims against Defendants Gomez, Rios, and Martinez.  Rather, Defendants argue

6    only that because Plaintiff had the ability to appeal the decision cancelling KVSP-O-16-02105,

7    albeit unsuccessfully, there were avenues of appeal available to Plaintiff.  However, Plaintiff's

8    contention is that he was prevented from timely exhausting his remedies because his grievance

9    was not properly processed from the beginning.  When Plaintiff attempted to resubmit the appeal

10   after learning it had not been received, he included evidence of his original timely submission.

11   Nevertheless, his appeal was cancelled as untimely, and his appeal of the cancellation was also

12   rejected.  It is unclear what other steps Plaintiff could have taken to properly exhaust these

13   claims.

14          "When prison officials improperly fail to process a prisoner's grievance, the prisoner is

15   deemed to have exhausted available administrative remedies."  Andres v. Marshall, 867 F.3d

16   1076, 1079 (9th Cir. 2017).  Defendants have not contested, by evidence or argument, that

17   Plaintiff submitted a grievance as to these claims within the time permitted.  Nor have they

18   disputed Plaintiff's factual assertions that despite the timely submission, the grievance was simply

19   not processed.  This failure made administrative remedies unavailable to Plaintiff, despite

20   Plaintiff's later efforts to resubmit the appeal or to appeal the cancellation of the resubmission.

21   Plaintiff's continued efforts to utilize the administrative grievance system did not cure this

22   original failure.

23          Thus, it is undisputed that prison officials' failure to process Plaintiff's timely-submitted

24   grievance thwarted Plaintiff from taking advantage of the grievance process, making that process

25   unavailable as to these claims.  See Ross v. Blake, 136 S. Ct. 1850, 1860 (2016).  The Court

26   recommends that the motion for summary judgment be denied as to Plaintiff's excessive force

27   claims against Defendants Gomez, Rios, and Martinez.

28   ///

### 3.    Defendants Esparza and Duncan

Plaintiff submitted inmate appeal log number KVSP-O-16-02151 alleging due process violations by Defendants Esparza and Duncan.  (UMF 18.)  The appeal was screened out on August 10, 2016 for missing necessary supporting documents.  (UMF 19.)  After verifying that no documents were missing, Plaintiff resubmitted the appeal.  (UMF 20.)  The appeal was rejected a second time for missing a complete CDCR 837 on September 23, 2016.  (UMF 21.)  Plaintiff reviewed the documents again and counted the pages of the CDCR 837, found that everything was included, and resubmitted the appeal.  (UMF 22.)  This appeal was cancelled on October 2, 2016 for disregarding appeal staff's previous instructions.  (UMF 23.)

On October 12, 2016, Plaintiff filed a CDCR-22 form to Correctional Officer Briseno, the officer who originally received the appeal from Plaintiff.  Officer Briseno verified that he watched Plaintiff count out the 36 pages of the CDCR 837 included in the 602 that was being cancelled for missing the CDCR 837.  (UMF 24.)  Officer Briseno also stated that he looked up the 837 referenced and verified that only 36 pages were included.  (ECF No. 46, p. 53.)  At this point, Plaintiff believed that the "powers that be" were attempting to deny and delay the process of his appeals, and he filed the instant action.  (UMF 25; ECF No. 46, pp. 11–12.)

Plaintiff successfully appealed the cancellation in inmate appeal log number KVSP-O-16-03217, and received a third level decision on March 20, 2017 ordering KVSP-O-16-02151 to be processed.  (UMF 26.)  KVSP-O-16-02151 received a second level decision on May 22, 2017. (Id.)

Again, Defendants have provided no argument or evidence to dispute Plaintiff's factual assertions regarding his multiple attempts to submit a grievance regarding his claims against Defendants Duncan and Esparza.  Defendants do not acknowledge the evidence submitted that supports Plaintiff's contention that he submitted the same complete paperwork three times, and that his appeal was ultimately cancelled for missing the paperwork that was already attached. Again, Plaintiff's continued efforts to utilize the grievance process do not cure prison officials' failure to properly process Plaintiff's original grievance, even where, as here, Plaintiff was ultimately successful in overturning the cancellation after he filed the complaint in this action.

1  Andres, 867 F.3d at 1079 (dismissal for failure to exhaust inappropriate where administrative

2  remedies were unavailable at the time complaint was filed, even where plaintiff was still utilizing

3  the grievance process).

4       As Defendants have not disputed that prison officials failed to process Plaintiff's timely

5  and complete submission of his grievance, the Court recommends that the motion for summary

6  judgment be denied as to Plaintiff's due process claims against Defendants Duncan and Esparza.

7               4.     Defendant Sao

8       The allegations giving rise to Plaintiff's deliberate indifference claim against Defendant

9  Sao occurred on or about May 11, 2016, or five days after Plaintiff submitted a medical health

10  care services request form.  (ECF No. 22, p. 10.)  Plaintiff asserts that he submitted a Medical

11  Health Care Appeal regarding this claim on June 30, 2016.  (UMF 28.)

12       Defendants assert that there is no evidence that the appeal was actually submitted, and,

13  even if submitted on the date indicated, the appeal was untimely.  Plaintiff has not stated that he

14  attempted to submit a grievance against Defendant Sao on any earlier date, or that he was

15  prevented from doing so.  Plaintiff has also not disputed the date of submission or the date of the

16  events at issue.  Rather, Plaintiff argues that he never received a timely response to the June 30,

17  2016 appeal, and therefore his administrative remedies should be considered exhausted.

18       Defendants are correct that, even Plaintiff submitted his appeal on June 30, 2016, the

19  appeal was untimely, as it was submitted more than thirty days after he was seen by Defendant

20  Sao.  Prison officials' failure to respond to the appeal, if submitted, therefore did not make

21  administrative remedies unavailable as to this claim.  Based on these reasons, the Court finds that

22  Plaintiff has not exhausted his administrative remedies with regard to his deliberate indifference

23  claim against Defendant Sao and that he should not be excused from the failure to exhaust.

24  **V.**    **Conclusion and Recommendation**

25       Accordingly, IT IS HEREBY ORDERED as follows:

26    1.  Plaintiff's motion to supplement, (ECF No. 54), is GRANTED; and

27    2.  Defendants' motion to strike Plaintiff's unauthorized surreply, (ECF No. 55), is DENIED.

28  ///

Furthermore, IT IS HEREBY RECOMMENDED as follows:

1. Defendants' motion for summary judgment for failure to exhaust administrative remedies, (ECF No. 37), be GRANTED IN PART and DENIED IN PART;

2. Plaintiff's deliberate indifference claim against Defendants Sao be DISMISSED, without prejudice, for the failure to exhaust available administrative remedies;

3. Defendant Sao be DISMISSED from this action; and

4. This action proceed on Plaintiff's against Defendants Gomez, Rios, and Martinez for excessive force and against Defendants Duncan and Esparza for violations of Plaintiff's due process rights.

***

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 9, 2020**          /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE